UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROL PROAL,<br><br>               Plaintiff,<br><br>               v.<br><br>JP MORGAN CHASE & COMPANY and<br>CITIBANK, NA,<br><br>             Defendants. | CIVIL ACTION<br><br>NO. 4:16-CV-10126-TSH |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**
**(Docket No. 7)**

**August 22, 2016**

**HILLMAN, D.J.**

Carol Proal (Plaintiff) brings this lawsuit to challenge the foreclosure of her home, which occurred in January of 2010. She asserts a bevy of claims, seeking to show that an assignment of the mortgage was void and that JP Morgan Chase & Co. (JP Morgan) and Citibank, N.A. (Citibank) (collectively, Defendants) violated the Massachusetts consumer protection law. Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion (Docket No. 7) is ***granted***.

**Background**

The following facts are taken from Plaintiff's complaint. On or about March 28, 2007, Plaintiff purchased property located at 389 Ridge Road in Hardwick, Massachusetts (the property). She executed a promissory note (the note) in favor of Community Lending Incorporated (Community) for the purchase price of $528,000 and granted a mortgage (the mortgage) to secure

the note. On the same day, the mortgage was assigned to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Community. On or about March 29, 2007, EMC Mortgage Corporation (EMC) became the servicer of the mortgage. Plaintiff alleges that EMC is a subsidiary of JP Morgan.

In late 2008 or early 2009, Plaintiff fell behind on her mortgage payments. On or about March 27, 2009, the mortgage was assigned from MERS to Citibank, as trustee for "Certificate Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2007-3" (the trust). (Docket No. 1 at 5.) The assignment was signed by Liquenda Allotey, a vice president of MERS. The assignment was notarized and recorded. According to Plaintiff, under the trust's pooling and servicing agreement (PSA), the closing date of the trust was April 30, 2007. Plaintiff contends that the trust is governed by New York law.

Plaintiff asserts that the nomination and approval process for vice presidents of MERS was simple and "near instantaneous." (Docket No. 1 at 4). Plaintiff references a news article that allegedly reported that Allotey's signature was "a simple zigzag line" appearing on thousands of mortgage assignments, "raising questions about whether other individuals may have signed his name." (Docket No. 1 at 6). Plaintiff further alleges that William Hultman, a "true vice president of MERS," testified in front of the Virginia legislature in 2011 that "there was no authority from MERS for the appointment by him of vice presidents and secretaries as certifying officers"; that "only the MERS board of directors had that authority"; and that "the board did not have the authority to delegate that authority to Mr. Hultman." (Docket No. 1 at 4.) Plaintiff also asserts that Allotey was an employee of Lender Processing Services (LPS).

Citibank foreclosed on the mortgage in January of 2010 and then purchased the property as the high bidder at the foreclosure sale. The foreclosure deed was recorded in March of 2010. Approximately two years later, in March of 2012, Plaintiff executed and recorded a purported quitclaim deed, attempting to transfer the property from herself to herself and Russell Proal, in exchange for $100. In March of 2013, new owners purchased the property. According to Plaintiff, in September of 2014 she "was notified by the Massachusetts Attorney General that she was eligible for a settlement regarding JP Morgan, and that the settlement had left the door open for individual mortgagors to sue on their own behalf." (Docket No. 1 at 11.)

On January 27, 2016, Plaintiff filed the instant lawsuit against JP Morgan and Citibank, asserting six counts: (1) "to void or cancel assignment of the mortgage"; (2) wrongful foreclosure; (3) violation of Mass. Gen. Laws ch. 93A; (4) unjust enrichment; (5) "to set aside Trustee's sale"; and (6) "to void or cancel Trustee's foreclosure deed." Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).

It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556

## Discussion

1. <u>Counts I, II, V, and VI: Validity of the Foreclosure</u>

Defendants argue that Plaintiff lacks standing to challenge the assignment of the mortgage from MERS to Citibank because the assignment was not void. Under Massachusetts law, a mortgagor has standing to challenge the validity of a foreclosure by reason of the mortgagee's lack of legal authority to conduct it. *Bank of New York Mellon Corp. v. Wain*, 11 N.E.3d 633, 638 (Mas. App. Ct. 2014) (citing *Sullivan v. Kondaur Capital Corp.*, 7 N.E.3d 1113, 1116 (Mass. App. Ct. 2014)). However, when challenging the validity of an assignment, the mortgagor's standing is "limited to claims that a defect in the assignment rendered it void, not merely voidable." *Id.* (citing *Sullivan*, 7 N.E.3d at 1116 n.7). "A deficiency in an assignment that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or

its successors in interest." *Sullivan*, 7 N.E.3d at 1116 n.7; *see Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013).

"'Void' contracts or agreements are 'those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.'" *Wilson v. HSBC Mortgage Servs., Inc.*, 744 F.3d 1, 9 (1st Cir. 2014) (quoting *Allis v. Billings,* 47 Mass. 415, 417 (1843)). In the mortgage context, a void assignment "is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Id.* at 10 (quoting *Culhane,* 708 F.3d at 291).

In contrast, voidable contracts or agreements are those that are "injurious to the rights of one party, which he [or she] may avoid at his [or her] election." *Id.* at 9 (quoting *Ball v. Gilbert,* 53 Mass. 397, 404 (1847)). Although "the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it." *Id.* (citing *Cabot Corp. v. AVX Corp.,* 863 N.E.2d 503, 511-15 (Mass. 2007)). Under Massachusetts law, "when a corporate officer acts beyond the scope of his [or her] authority," the actions, "'although voidable by the corporation, legally could be ratified and adopted by it.'" *Id.* at 10 (quoting *Commissioner of Banks v. Tremont Trust Co.,* 156 N.E. 7, 14-15 (Mass. 1927)); *see Glovin v. Eagle Clothing Co.,* 142 N.E. 80, 80-81 (Mass. 1924) (holding that a corporation may ratify and become bound by obligations incurred on its behalf by its president where the president acted outside the scope of his authority).

Here, Plaintiff appears to allege that Allotey did not have the authority to assign the mortgage on behalf of MERS because Allotey was not properly deputized as a vice president of MERS and that, as a result, the foreclosure was invalid. However, even if Allotey acted outside of her authority when she executed the assignment, this would render the assignment voidable rather than void. *See Wilson*, 744 F.3d at 10. Moreover, under Massachusetts law, an "assignment

of mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of . . . vice president . . . of the entity holding such mortgage . . . shall be binding upon such entity." Mass. Gen. Laws ch. 183, § 54B. Thus, assuming that the facts alleged by Plaintiff are true, the assignment was nevertheless binding on MERS, which means that it was not void. Accordingly, Plaintiff lacks standing to challenge the validity of the foreclosure on this basis.

Next, Defendants argue that Plaintiff lacks standing to challenge the foreclosure on the basis that the transfer of assets to the trust was in violation of the trust's PSA. According to Plaintiff, the foreclosure was invalid because the trust's PSA listed a closing date of April 30, 2007, while the assignment to Citibank as trustee did not occur until March 27, 2009, rendering the assignment void.

Contrary to Plaintiff's contention, a violation of the PSA would render the assignment voidable rather than void. Thus, Plaintiff's argument fails for the reasons stated above. "[C]laims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (citing *Culhane,* 708 F.3d at 291); *see Sullivan v. Bank of New York Mellon Corp.*, 91 F. Supp. 3d 154, 171 (D. Mass. 2015) ("the vast majority of courts to have considered Plaintiffs' argument regarding noncompliance with the PSA under New York trust law have held that such challenges merely render the assignment voidable and, thus, do not support standing"); *see also Rajamin v. Deutsche Bank Nat'l Trust Co.,* 757 F.3d 79, 88 (2d Cir. 2014) ("the weight of New York authority is contrary to Plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of trust law."). Accordingly, because Plaintiff does not have standing

to challenge the foreclosure on the basis of the assignment or the transfer to the trust, counts I, II, V, and VI will be dismissed.[1]

2. *Count III: Chapter 93A*

Regarding count III, Defendants argue that the claim is barred by the statute of limitations. Claims brought under Chapter 93A must be commenced within four years after the cause of action accrues. Mass. Gen. Laws ch. 260, § 5A. Pursuant to the discovery rule, the claim accrues when the plaintiff discovers or reasonably should have discovered that she has been harmed by the defendant's conduct. *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006). The discovery rule "provides that the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" *Id.* (quoting *Felton v. Labor Relations Com'n,* 598 N.E.2d 687, 689 (Mass. App. Ct. 1992)). "A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." *Id.* (quoting *Szymanski v. Boston Mut. Life Ins. Co.,* 778 N.E.2d 16, 20-21 (Mass. App. Ct. 2002)).

Plaintiff's Chapter 93A claim is based on Defendants having allegedly "used the power of sale contained in a mortgage they didn't own to foreclose on the Plaintiff's home." (Docket No. 1 at 13.) The foreclosure occurred in January of 2010, but Plaintiff did not file suit until January of 2016—two years beyond the four-year limitations period. Plaintiff argues that the discovery rule applies, although she does not specify precisely when she became aware of the alleged consumer

---

[1] To the extent that Plaintiff challenges the validity of the foreclosure on the basis that Citibank did not hold both the mortgage and the note at the time of foreclosure, this argument fails as well. In *Eaton v. Fed. Nat. Mortgage Ass'n*, 969 N.E.2d 1118, 1129 (Mass. 2012), the Massachusetts Supreme Judicial Court established the rule that a foreclosing mortgagee must hold the note at the time of foreclosure. *Eaten* was decided more than two years after the foreclosure of Plaintiff's mortgage and applied only to foreclosure sales for which the notices of sale were given after the date of the court's opinion. *Id.* at 1133.

protection violations. She contends that, as a lay person, she was not immediately aware of the alleged defects in the assignment; however, "[s]lowly, as the years went by, [she] discovered the nature of the wrongs and the identities of those who had wronged her." (Docket No. 1 at 10.) She contends that she did not learn of Allotey's allegedly invalid authority until "[y]ears after the foreclosure" and did not learn that she could file suit on her own behalf until she received a notification from the Massachusetts Attorney General in September of 2014. (Docket No. 1 at 10-11.)

Despite Plaintiff's contentions, it is undisputed that she was aware of the event that caused her harm—namely, the foreclosure—in 2010 when it occurred. Moreover, the assignment and the foreclosure deed were both recorded, in 2009 and 2010, respectively, putting her on inquiry notice of potential wrongdoing. "The discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a 'duty to investigate' on a plaintiff who has cause for concern." *Epstein*, 460 F.3d at 188 (quoting *Doucette v. Handy & Harmon,* 625 N.E.2d 571, 573 (Mass. App. Ct. 1994)). Although I sympathize with Plaintiff for the harm that she has suffered due to losing her home, and I acknowledge that the law of mortgage foreclosures is complex, Plaintiff had a duty to investigate potential wrongdoing within a reasonable time after she learned of the assignment and foreclosure. Accordingly, Plaintiff's Chapter 93A claim is barred by the statute of limitations.

Moreover, even if Plaintiff's Chapter 93A claim were not time-barred, she has failed to plead facts showing that her harm—the foreclosure—occurred as a result of the allegedly unfair conduct. She contends that the defects in the assignment rendered it void; however, as discussed above, her allegations, if true, would merely render the assignment voidable. Thus, assuming arguendo that Allotey acted outside of her authority when executing the assignment, and that the

assignment occurred in violation of the terms of the trust's PSA, legal title nevertheless passed to Citibank, giving it the authority to foreclose on the mortgage. Accordingly, count III will be dismissed.

3. *Count IV: Unjust Enrichment*

Plaintiff contends that Citibank has "been unjustly enriched at the expense of the Plaintiff, and thus Plaintiff has been unjustly deprived," because Citibank benefited from the foreclosure and sale. (Docket No. 1 at 13.) To prevail on a claim for unjust enrichment, a plaintiff must demonstrate: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir.), *decision clarified on denial of reh'g,* 559 F.3d 1 (1st Cir. 2009) (citing 26 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 68:5 (4th ed.1993)). "A claim of unjust enrichment is appropriate 'where an agreement is too indefinite to be enforced . . . [or] where no contract is made because each of the parties had a materially different understanding of the terms.'" *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 233-34 (1st Cir. 2005) (quoting 1–1 *Corbin on Contracts,* § 1.20(b) (2004)). This equitable remedy is wholly inapplicable to Plaintiff's situation. The foreclosure and sale occurred under the terms of the mortgage and the statutory power of sale, not a quasi-contractual relationship pursuant to which Plaintiff conferred a benefit upon Citibank. Accordingly, count IV will be dismissed.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss (Docket No. 7) is ***granted***, and Plaintiff's complaint is hereby dismissed.

**SO ORDERED.**

                    **/s/ *Timothy S. Hillman*** 
                    **TIMOTHY S. HILLMAN**
                    **DISTRICT JUDGE**